STATE OF MAINE

KNOX, ss.

NOV 18 2002

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-00-042

PHILIP NAPIER and
DAVID MASON,

Plaintiffs

v.

**DECISION AND ORDER**

STATE OF MAINE,
DEPARTMENT OF
CORRECTIONS,

Defendant

DONALD L. GARBRECHT
LAW LIBRARY

NOV 25 2002

## I.    Introduction.

This matter is before the court for the resolution of three motions. The first of these is the defendant's motion to dismiss in which it seeks dismissal of this case in its entirety. The second is the motion of plaintiff David Mason to amend the complaint a second time. Last is the recent motion by the plaintiffs to amend their objection to the motion to dismiss.

## II.    Factual and Procedural History.

In their first amended complaint, the plaintiffs, Phil Napier (Napier) and David Mason (Mason) advise the defendant and the court of the following allegations:

Mason is an inmate at the Maine State Prison (MSP), having been committed there on October 1, 1997. He has a "disability" within the meaning of the Americans With Disabilities Act, the Rehabilitation Act, and the Maine Human Rights Act (MHRA), namely a substantially limited ability to walk due to traumatic injury resulting in a fracture to his left femur. He and his doctors, prior to April 19, 1998, repeatedly advised the defendant, Department of Corrections (DOC), that Mason should have a special

showering facility to accommodate his disability. Mason alleges he was denied such a showering facility that would accommodate his disability and fell in a shower at MSP on April 19, 1998, resulting in "severe injuries, including an additional fracture to his left leg." Amended Complaint, ¶ 18. He says he would not have fallen if he had been provided a showering facility which accommodated his disability.

Mason advises that before he filed his original complaint in this case, he exhausted his administrative remedies as required by the Prison Litigation Reform Act of 1995. He says he did so through his "agent" who corresponded with MSP Warden Jeffrey D. Merrill who, he alleges, failed to adequately address Mason's concerns. Amended Complaint, ¶ 11. In this regard, Mason also claims that the defendant is estopped from raising the defense of his failure to exhaust administrative remedies because its counsel represented to his attorney that, because of the nature of plaintiff's administrative remedies, "pursuing administrative remedies in accordance with the Prison Litigation Reform Act was not necessary if . . . Mason was seeking money damages." *Id.*

Napier does not allege that he is currently incarcerated by the defendant, but was committed to MSP on January 20, 1998. He, too, claims he has a "disability" as defined by the three statutes cited in the Amended Complaint. *Id.*, ¶ 7. In this regard, he says he suffered gunshot wounds to both legs in 1995 and "has been substantially limited in his ability to walk since that time." *Id.* The limitations are alleged to be, "no repeated squatting, no standing longer than 30 minutes without 15 minutes of rest . . ., no strenuous activity." *Id.*

At the time of his commitment, Napier says he had a cane with an attached seat which was confiscated and not returned to him despite his request that it was necessary

to accommodate his disability. He also asked that the crutches the defendant issued to him be modified with an attached seat which request the defendant also denied. Further, sometime after January 22, 1998, Napier asked to use a walker when taking a shower because it was necessary to accommodate his disability, but this request was also refused. Because this happened repeatedly during Napier's incarceration, he says he was forced to take sponge baths. He also claims that he was repeatedly denied the use of a handicapped accessible shower with the result that he was afforded only five or six "total" showers during his incarceration while other inmates showered as many as ten times a week. *Id.*, ¶ 22.

Napier also alleges that he was enrolled at a class at MSP, but needed to go to "the yard," then the library, and then to the chapel for the class, rather than a direct route, in order to comply with a requirement to get, and turn in, a pass for this purpose. He requested permission to use a direct route to avoid being late for class which the defendant refused. As a result, he says he was routinely late for class.

Napier alleges that he filed a complaint of discrimination with the Maine Human Rights Commission (MHRC) which, after its investigation, found reasonable grounds to believe that unlawful discrimination against him had occurred.

Both plaintiffs make the following legal assertions:

(1)     the MSP is a "public entity;"

(2)     it operates a "program or activity" as defined by the Rehabilitation Act; and

(3)     the MSP is a "place of public accommodation" as defined by the MHRA.

The plaintiffs allege they filed a Complaint on the state law claims in the United States District Court for the District of Maine on January 14, 2000, but dismissed this

3

action voluntarily on June 22, 2000. The first Complaint in this case was filed in this court on July 19, 2000, the Amended Complaint on December 6, 2000.

In Count I of the Amended Complaint, the plaintiffs allege that they have been subject to unlawful discrimination prohibited by the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

In Count II, they allege that they have been subject to unlawful discrimination in violation of the Rehabilitation Act, 29 U.S.C. § 794, because, solely due to their disabilities, they have been excluded from participation in, or denied the benefits of, programs offered by the DOC.[1]

In Count III, the plaintiffs claim that they have been subject to unlawful discrimination prohibited by the MHRA because the defendant denied them full and equal enjoyment of the "advantages, facilities, services and privileges" of the MSP. *Id.*, ¶ 31. Also, they allege the defendant failed to make reasonable modifications to afford the plaintiffs access to its facilities and services and also failed to remove architectural and communication barriers which were achievable.

In Count IV, plaintiff Mason alleges that the defendant was negligent and that its negligence proximately caused his injuries. He claims that this negligence included the "construction, operation and maintenance of a public building," and the failure to abide by building standards as to accessibility and safety as required by state, federal and local laws.

The plaintiffs seek the following remedies, among others:

---

[1] Actually, paragraph 29 of the Amended Complaint does not tell its reader that the defendant has denied the plaintiffs participation in or benefit of its programs, but it is apparent from the entire context of the Amended Complaint that they are making this claim.

4

(1)     a declaratory judgment that the defendant's conduct was in violation of the plaintiffs' rights;

(2)     an injunction ordering the defendant from continuing to violate the plaintiffs' rights;

(3)     compensatory damages;

(4)     attorney's fees; and

(5)     all available relief under the MHRA, including civil penal damages.

## III.     Defendant's Motion to Dismiss.

By this motion, the defendant seeks dismissal of the Amended Complaint in its entirety, relying on M.R. Civ. P. 12(b)(1), lack of subject matter jurisdiction, and 12(b)(6), failure to state a claim on which relief can be granted.

Originally, it was agreed by all parties that Count I, which alleges actionable violations of the ADA, must be dismissed by virtue of the holding in the recent case of *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356, 121 S.Ct. 955 (2001). The plaintiffs' most recent motion, however, asks to resurrect their objection to the motion to dismiss as to this count because of a recent decision of the First Circuit Court of Appeals which will be addressed at section V of this Decision and Order.

With respect to Count IV, the defendant argues that Mason's claim for negligence is barred by the statute of limitations under the Maine Tort Claims Act (MTCA), 14 M.R.S.A. § 8110, namely two years. Thus, because Mason says he was injured on April 19, 1998, but did not file his complaint until July 19, 2000, more than two years have expired since this cause of action in negligence accrued and the case is time-barred.

5

The defendant makes the same argument as to Mason's claims which rely on violations of the MHRA in Count III because it, too, provides for a two-year statute of limitations. 5 M.R.S.A. § 4613(2)(C). So, it argues, because Mason specifically alleges that the defendant's discriminatory actions which caused him injury occurred on or prior to April 19, 1998, Amended Complaint, ¶¶ 13-18, and has alleged no discriminatory acts thereafter, his action under the MHRA expired on April 19, 2000, so that his original complaint filed on July 19, 2000, is too late.

According to the defendant, Napier's claims under the MHRA should suffer the same fate. It points out, and the Amended Complaint confirms, that Napier alleges specific acts of discrimination to have occurred on or about January 20 and 22, 1998. More importantly, according to exhibit A which this plaintiff attached to, and incorporated in the Amended Complaint, he was removed from the MSP -- the sole place where he claims discriminatory acts occurred -- on July 18, 1998. Amended Complaint, ¶¶ 4-6, 10, 19-24, 31, Exhibit A. Accordingly, the defendant says, Napier's count alleging violations of the MHRA can proceed no further as his Complaint alleging this cause of action was filed late, albeit by one day.

The plaintiffs reply that they originally filed their Complaint in federal court on January 14, 2000, relying on federal supplemental jurisdiction over their state law claims pursuant to 28 U.S.C. § 1367(a). Further, they advise that they voluntarily dismissed this federal action on June 22, 2000, and that, pursuant to 28 U.S.C. § 1367(d), the applicable state statutes of limitations are tolled during the pendency of the federal case and for 30 days after dismissal of the federal complaint. So, they argue, because this period expired on July 22, 2000, and the Complaint was filed in this court on July 19,

2000, their Complaint was timely by virtue of their earlier filing in federal court which was accomplished within two years of the actions complained of.

Title 28 U.S.C. § 1367(a) provides the federal district courts with "supplemental jurisdiction" over all other claims related to claims over which they have original jurisdiction so that they form part of the same case or controversy. Such supplemental claims include those which might have been brought in state court alleging causes of action founded on state law.

Section 1367(d) provides for the tolling of the state statute of limitations if the action brought under section 1367(a) is dismissed. It reads:

> (d)     The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

The plaintiffs interpret this subsection as requiring the tolling of the state statute of limitations while a case with supplemental claims is pending in the federal district court and that, upon its dismissal, an additional 30 days is added on to the limitations period.

Relying on a commentator's discussion of the applicability of this tolling provision, the defendant argues that the tolling of the state statute of limitations plus 30 days only applies when a federal judge has exercised his discretion under section 1367(c) and dismissed the case by declining to exercise the court's supplemental jurisdiction as the cited subparagraph permits. Thus, 13B CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H,. COOPER, FEDERAL PRACTICE AND PROCEDURE, § 3567.1, n. 51 (2002 Supp.) tells its reader, in part:

7

> Although in this respect, as in others, § 1367 could have been more clearly drafted, the tolling provision of (d) should be read as coming into play only if the court exercises its discretion, under § 1367(c), to dismiss a supplemental claim of which it has jurisdiction under subsection (a) . . . . This interpretation is supported by the text of (d), which applies only if a claim asserted under subsection (a) has been dismissed. It is also supported by the report of the House Judiciary Committee, which says that (d) "provides a period of tolling of statutes of limitations for any supplemental claim that is dismissed under this section and for any other claims in the same action voluntarily dismissed at the same time as or after the supplemental claim is dismissed."

(Citations omitted).

Thus, these commentators would parse section 1367(d) so that it would be understood that it would toll the limitations period for any claim under subsection (a), i.e., supplemental state claims, and for *any other* claim, i.e., *not* supplemental state claims, which are voluntarily dismissed at the same time or after the dismissal of the supplemental state claim under subsection (a). Thus read, only nonsupplemental claims which are voluntarily dismissed can enjoy the tolling of their limitations period. Under this construction, supplemental claims under subsection (a) can benefit from such tolling only if they are dismissed by the court as opposed to being voluntarily dismissed.[2]

Said differently, and if this interpretation is correct, the tolling provisions only apply to nonsupplemental, i.e., "other claims" which are voluntarily dismissed, and those which are judicially dismissed. Thus, because plaintiffs' supplemental claims are not "other claims" and were voluntarily dismissed, rather than dismissed by the court, they cannot benefit from the tolling provision of section 1367(d).

---

[2] This distinction between voluntary dismissal and dismissal in this interpretation stems from these commentators' observation that without voluntary dismissal, the "only provision for dismissal in § 1367 is subsection (c)." WRIGHT, MILLER AND COOPER, FEDERAL PRACTICE, *id.* Subsection (c), as noted, *infra*, provides for a district court to decline, and therefore dismiss, a supplemental state claim for the reasons there cited. A dismissal of a claim not voluntarily made, which is not supplemental in nature, would be subject to F.R. Civ. P. 12(b)(1) and not subsection (c) -- the only basis for a dismissal under section 1367 -- and therefore could not benefit from subsection (d)'s tolling provision.

This court finds this construction of section 1367(d) compelling as it provides for a plaintiff to pursue a supplemental claim properly in federal court in state court when a federal judge has exercised discretion under subsection (c) to dismiss the case.[3] Such a dismissal is not on the merits but simply one in which a federal judge has decided that the state claim is better prosecuted in state court. Under these circumstances, over which a plaintiff could exercise no control, he should not be barred from recommencing this action in state court which would also have jurisdiction over such state-law based claims. If, however, the plaintiff has voluntarily dismissed the claim for whatever reason he may have, he should not be permitted to "stretch" the statute of limitations applicable in state court where he could have commenced the action in the first instance. To do so would permit him a longer statute of limitations than a similarly-situated plaintiff who commenced his action in state court. Said differently, a plaintiff who commences a state-law, i.e., "supplemental," claim in federal court, in the absence of that court's declination of jurisdiction, should not be permitted to dismiss that action voluntarily and therefore reap a reward of delay which applicable state law would prohibit.

In this regard, one commentator has made the persuasive case that 28 U.S.C. § 1367(d) is unconstitutional. Beckom, *Pushing the Limits of the Judicial Power: Tolling State Statutes of Limitations Under 28 U.S.C. § 1367(D)*, 77 TEXAS LAW REVIEW 1049 (1999). This is because Congress, in enacting section 1367(d), has required a state court to consider a claim that is barred by state law, contrary to the sovereign authority of the state to enact and enforce statutes of limitations which affect that state's laws. This

---

[3] *See* Dennis F. McLaughlin, *The Federal Supplemental Jurisdiction Statute - A Constitutional and Statutory Analysis*, 24 ARIZ. ST. L.J., 849, 982-988 (1992) for a comparable analysis.

provides a federal court, without any constitutionally-based justification, the power to govern practice and procedure as to state law claims in state courts. Moreover, as this author has observed, "[b]ecause federal courts are required to apply state statutes of limitations when they are adjudicating state claims, it would be strange indeed if a federal court that was not adjudicating a state claim could force the state court to apply a federal tolling provision to a claim based entirely on state law." *Id.* at 1077 (footnotes omitted).

This constitution-based argument is as compelling when the state supplemental claim in federal court is voluntarily dismissed by a plaintiff if section 1367(d) is interpreted to allow the state statute of limitations to be tolled for a claim thus terminated in federal court. Under such a circumstances, by virtue of a plaintiff's unilateral, voluntary action, he is able to extend, via federal law, a state statute of limitations which would otherwise bar his claim. Such an interpretation allows both the plaintiff and, arguably, the federal court, to usurp the authority of the state to set limits on its state-authorized causes of actions. In the view of this court, it is unlikely that the Congress could have intended such a result.

In sum, for the reasons here set out, this court concludes that 28 U.S.C. § 1367(d) cannot be interpreted to extend the applicable two-year statute of limitations to the plaintiffs' MTCA and MHRA claims found at Counts III and IV which they voluntarily dismissed in federal court. Therefore, as the calendar recited herein demonstrates, these claims are time-barred and must be dismissed.

The defendant also argues that Count III of the Amended Complaint which relies on the MHRA cannot, as a matter of law, succeed because it depends on the plaintiffs'

erroneous interpretation of "a place of public accommodation," 5 M.R.S.A. § 4553(8), as including a prison, such as MSP.

The plaintiffs respond that MSP is "a place of public accommodation" under the statutory definition of that phrase if one were to refer to parts of the categorical examples of such a place found in the statute. Thus, they argue, the MSP is a facility, operated by a public entity, 5 M.R.S.A. § 4553(8), whose operations fall within the category of a "place of lodging . . . conducted for the . . . accommodation of transient guests . . ." *id.*, subparagraph A; or ". . . other establishment of the State . . . government," *id.*, subparagraph M; or an establishment "that in fact caters to, or offers its goods, facilities or services to . . . the general public." *Id.*, subparagraph N. In particular, the plaintiffs assert that subparagraph M most closely fits the category within which MSP falls, namely, "[a] municipal building, courthouse, town hall, or other establishment of the State or local government." *Id.*

The defendants do not contest that MSP is publicly operated but contend that it fits within none of the definitional subparagraphs cited by the plaintiffs when they are read in their entirety and the interpretive principle of ejusdem generis is applied. This axiom is as follows: "Where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *New Orleans Tanker v. Dep't of Transportation*, 1999 ME 67, ¶ 7, 728 A.2d 673, 675 (*quoting* 2A NORMAN J. SINGER, SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION, § 47.17 (5th ed. 1992)).

Applying this rule to subparagraph A of section 4553(8), it is plain that a place of public accommodation under this category must be "similar in nature" to an "inn, hotel or motel." *New Orleans Tanker*, 728 A.2d at 675. It is obvious that these words do not

11

embrace an entity such as a prison. Reasons for this conclusion abound, not the least of which is that an individual selects an "inn, hotel or motel," goes to and from such place at will, while an inmate is compelled to go to a prison, and has no control over the length of his stay there. As well, subparagraph A describes a place of lodging for entertainment or accommodation of "guests or those seeking health, recreation or rest." In no regard does a prison meet this description.

Subparagraph M is similarly inapplicable. Here, a place of public accommodation is described as "a municipal building, courthouse, town hall, or other establishment of the State or local government." 5 M.R.S.A. § 4553(8)(M). Again, a prison is not a place that is similar in nature to the examples cited. They are places where members of the public have free access to conduct business with their governments, or observe them in operation. As the defendant points out, a prison is not fully open to the public and access to its functions are necessarily quite limited and controlled.

The more generalized category of public accommodation described at subparagraph N also would not include a prison. It covers "[a]ny establishment that in fact caters to, or offers its goods, facilities or services to, or solicits or accepts patronage from, the general public." 5 M.R.S.A. § 4553(8)(N). By its very nature, a prison offers no services to the general public;[4] indeed, it "services" a tiny minority of the population who, rather than electing to go there, are forcibly segregated from the general public and compelled to reside there while they are offered "goods, facilities and services," but can in no way be considered members of "the general public."

---

[4] The only service a prison offers to the general public is protection from the people committed there. This, of course, requires little or no access by, or use of, such a facility by the public.

The plaintiffs also argue that, "The Maine Human Rights Commission found that the Maine State Prison is a 'place of public accommodation' in the proceedings before that agency." Plaintiffs' Objection to Defendant's Motion to Dismiss, p. 2. From this, it may be inferred that the plaintiffs ask this court to defer to this interpretation of "public accommodation" consistent with the principle that courts ought to yield to the interpretation of a statute administered by an executive agency, in this case, the Maine Human Rights Commission's interpretation of the MHRA. *See Imagineering, Inc. v. Superintendent of Ins.*, 593 A.2d 1050, 1053 (Me. 1991).

In this regard, the plaintiffs have attached to their Amended Complaint the Investigator's Report, signed by the investigator in this case and the executive director of the MHRC. In it, these authors make the bald statement, "The Maine State Prison is a place of public accommodation and is subject to the provisions of the Maine Human Rights Act." Amended Complaint, Exhibit A, pp. 1-2. No analysis is offered for this conclusion except the correct observation that the Supreme Court of the United States has held that a state prison fits within the ADA's definition of "public entity," citing *Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 118 S.Ct. 1952 (1998). Amended Complaint, Exhibit A, p. 6.

However, in prosecuting Count III of the Amended Complaint, the plaintiffs have made clear that they are alleging that the defendant's discriminatory acts at the MSP rest upon that institution's characterization as "a place of public accommodation" under the MHRA, rather than it being "a public entity" as defined in the ADA. Amended Complaint, ¶¶ 4, 6, 30-31. That being so, *Yeskey* is of little precedential value as it addresses the meaning of "public entity" under a federal statute which may apply to Count I of the Amended Complaint which relies on the ADA, but not to Count III

13

which rests on our MHRA and the related, but quite different state law phrase, "place of public accommodation."

All this being so, neither *Yeskey* nor the Investigator's Report which relies on that case provide any rationale for concluding that MSP is "a place of public accommodation" as defined in our MHRA. Accordingly, the Investigator's Report can be afforded no deference particularly where, as here, the Legislature has expressed its intent in a detailed definition of "public accommodation" which the MHRC staff has simply not applied in this case. *See Agro v. Public Utilities Comm'n*, 611 A.2d 566, 569 (Me. 1992).

Last, the plaintiffs cite *Chisholm v. McManimon*, 97 F.Supp.2d 615 (D.N.J. 2000), for the proposition that prisons have been defined as "places of public accommodation" under other states' laws. *Chisholm*, however, is also a case of weak precedential value. It was decided at the trial court level, endeavoring to interpret a state statute where there was no guidance from the appellate courts of that state. Moreover, neither the court in *Chisholm*, nor the plaintiffs, have advised this court how the state statute there defined "place of public accommodation" so that it might be compared to our law. As important, the court in *Chisholm* predicted that the highest court of New Jersey, the state in which that case arose, would apply federal law as outlined in *Yeskey*, and conclude that the *New Jersey Law Against Discrimination*, N.J.S.A. 10:5-4.1, would apply to activities offered at correctional institutions. *Yeskey*, however, as noted *infra*, did not hold that a prison was "a place of public accommodation," but was rather "a public entity," a concept neither in dispute nor dispositive of the controversy pending here as to Count III of the Amended Complaint where the plaintiffs rely on our MHRA.

From all this, the court concludes that under Maine law the MSP is not "a place of public accommodation" so that the MHRA might apply to the services and facilities it

14

offers its inmates. 5 M.R.S.A. § 4553(8). That being so, no action may be brought by these plaintiffs, relying on the MHRA, to address grievances alleged to stem from the defendant's alleged discrimination against them by its denial to them of full and equal enjoyment of the facilities, services and privileges at the MSP. Accordingly, Count III of the Amended Complaint must be dismissed on this basis as well.

The defendant also seeks dismissal of the plaintiffs' federal claims found at Counts I and II of the Complaint because the Prisoner Litigation Reform Act of 1995, 42 U.S.C. § 1997e (PLRA) requires that a prisoner plaintiff exhaust administrative remedies before commencing an action based on prison conditions.[5] It reads: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Federal courts have enforced this unambiguous language as a condition precedent to any prisoner litigation based on federal law; that is that the prisoner must have exhausted his administrative remedies before commencing such an action. *See, e.g., Brown v. Toombs*, 139 F.3d 1102 (6th Cir. 1998).

In this case, the defendant has attached DOC administrative rules, entitled "Client Grievance Policy and Procedures," to this motion and plaintiff Mason apparently does not contest their authenticity or applicability to his disputes with DOC.

Instead, this plaintiff argues that the Prison Litigation Reform Act's exhaustion requirement is not jurisdictional and can be waived when a prisoner seeks only money damages when such a remedy is not available through a correctional facility's

---

[5] Apparently, the parties agree that because Napier was no longer an inmate when he commenced this action, the PLRA and its exhaustion requirement do not apply to him.

administrative process. *See Rumbles v. Hill,* 182 F.3d 1064, 1069 (9th Cir. 1999), *contra Alexander v. Hawk,* 159 F.3d 1321, 1326 (11th Cir. 1998). Thus, because the DOC's Client Grievance Policy and Procedures do not provide for money damages, the plaintiff says, he should not have had to have exhausted administrative remedies before commencing this suit.

As the defendant points out, however, Plaintiff Mason does not seek only money damages in this case; he also asks for injunctive and declaratory relief, apparently to remedy the alleged violations of federal law as pled in Counts I and II and further articulated in his Prayer for Relief. Amended Complaint, pp. 6-8. That being so, the exception to the exhaustion requirement when a prisoner litigant seeks only money damages does not apply in this case. *See also Booth v. Churner,* 206 F.3d 289, 299-300 (3d Cir. 2000) (prisoner required to exhaust administrative remedies even when money damages are sought).

Plaintiff Mason also argues that he substantially complied with the DOC's administrative procedures by contacting the warden and attempting to reach a resolution of his grievance which he describes in the Amended Complaint as correspondence with the warden "through his agent." Amended Complaint, ¶ 11. Taking this assertion as true, it is plain that a letter to the warden through an agent does not comply with DOC's three-step grievance process at MSP. Indeed, this plaintiff has throughout the extensive briefing in this case suggested no compliance with the DOC's administrative procedures other than this assertion concerning a correspondence with the warden. Accordingly, because plaintiff Mason never alleges that he pursued his grievance through its various steps, it can fairly be said that he did not "exhaust" his

16

administrative remedies, but was content, at first, to have his claim expressed in a letter to the warden through an agent. Motion to Dismiss, DOC Policy 14.5, Procedure E.

The plaintiff also claims that the defendant is estopped from raising the issue of his failure to exhaust administrative remedies because the defendant's lawyer, an assistant attorney general, told his attorney that it was not necessary for him to exhaust administrative remedies because of the nature of the remedies sought, namely, money damages.[6] The Amended Complaint alleges that this conversation occurred on October 9, 1998. Amended Complaint, ¶ 11. Mason, however, cites April 19, 1998, as the date on which he suffered injury as a result of the defendant's discriminatory acts and alleges no unlawful behavior on the latter's part thereafter. Amended Complaint, ¶¶ 13-16. Thus, it appears from the plaintiffs' Amended Complaint that the alleged conversation with DOC's attorney occurred more than five months after the event of which he complains and long after the five-day time period in which an inmate of MSP may file an administrative grievance. From this it is plain that if this conversation occurred, it could not have affected the debate over the proper exhaustion of administrative remedies because the plaintiff had already failed to comply with DOC's administrative processes in a timely way and therefore cannot be said to have exhausted them. It makes no difference whether or not the assistant attorney general gave inaccurate advice to opposing counsel; the time for pursuing administrative remedies had passed and nothing the plaintiff could do, with or without this alleged misadvice, changes that.

From all this, it is plain that plaintiff Mason failed to exhaust his administrative remedies and is therefore barred from pursuing Counts I and II of this action by the

---

[6] The assistant attorney general denies making the statement attributed to her. However, in acting on a motion to dismiss, the court is required to accept the material allegations in the complaint as admitted. *Seacoast Hangar Condo. II Ass'n v. Martel*, 2001 ME 112, ¶ 16, 775 A.2d 1166, 1171.

be dismissed as to him.

The defendant also alleges that the plaintiffs' federal claims found at Counts I and II ought to be dismissed as time barred. DOC reasons that because neither the Americans With Disabilities Act nor the Rehabilitation Act prescribes a statute of limitations, such must be borrowed from the limitations statute under our state law which is most analogous to these two claims, citing *Wilson v. Garcia*, 471 U.S. 261, 266, 267 (1985). Thus, the defendant says, because the most analogous Maine statute to the claims in Counts I and II is the Maine Human Rights Act, its two-year limitation ought to be applied. If so, as the discussion *infra* as to Counts III and IV demonstrates, Counts I and II should also be dismissed as the Complaint which contains them was filed here more than two years after the events of which the plaintiffs complain had occurred.

*Wilson v. Garcia*, however, has further instructions on the borrowing of state statutes of limitations for causes of action based on federal law. Prominent among them is that, at least as to federal civil rights claims, "characterization" of a cause of action should be treated as a federal question. *Id.* at 269. This is because, in part, Congress could not have intended to assign to state legislatures a conclusive role in "defining and characterizing the essential elements of a federal cause of action." *Id.* So, when a federal civil rights law has no "precise counterpart in state law," analogies to such related causes of action are "bound to be imperfect." *Id.* at 272. Accordingly, consistent with the nationwide purpose inherent in civil rights laws, the best alternative, according to the Supreme Court, is to select one common related state cause of action as a basis for the prosecution of such actions in the states, namely the common law cause of action based on a personal injury. *Id.* at 272-280.

18

From this it must be concluded that state courts, when seeking to find an analogous state statute of limitations in the absence of one dictated by Congress, should look to federal law for a solution. In the context of the ADA, our federal district court, in examining a Title III claim under that statute, determined that Maine's six-year statute of limitations for personal injury actions ought to apply because federal civil rights claims should be characterized generally as personal injury actions. *See Connors v. Maine Medical Center*, 42 F.Supp.2d 34, 51 (D.Me. 1999) (citing *Wilson v. Garcia, id.*).

Our district court is not alone in reaching the conclusion that, as a matter of federal law, the state statute of limitations on personal injury actions ought to be applied in actions relying on the ADA and the Rehabilitation Act. *Bush v. Commonwealth Edison Co.*, 990 F.2d 928, 933 (7th Cir. 1993) (Rehabilitation Act); *Saylor v. Ridge*, 989 F.Supp. 680, 686 (E.D. Pa. 1998) (Rehabilitation Act, Title II of ADA); *Downs v. Massachusetts Bay Transportation Authority*, 13 F.Supp.2d 130, 136 (D. Mass. 1998) (Title II of ADA) *Doe v. City of Milwaukee*, 871 F.Supp. 1072, 1077 (E.D. Wis. 1995) (Title II of ADA).

No authority is cited by the defendant to rebut the conclusion which must be drawn here, namely that as to the two counts which rely on the ADA and the Rehabilitation Act, this court is to yield to federal law in applying a statute of limitations which, by virtue of that body of law, must be our limitation on personal injury actions, namely six years. 14 M.R.S.A. § 752. Thus, because these federal civil rights causes of action were commenced within six years of their accrual, they cannot be dismissed on the basis that they are barred by the applicable statute of limitations.

## IV. Plaintiffs' Motion to Amend Complaint.

In this motion, filed on April 30, 2001, plaintiff David Mason seeks to amend the Complaint a second time in response to the defendant's motion to dismiss by alleging that he did exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e. Thus, in his motion and in his proposed Second Amended Complaint, Mason alleges that he has "now" completely followed the defendant's grievance procedures by filing a written "complaint" with the defendant on January 12, 2001. Second Amended Complaint ¶ 12. He also says that this grievance was denied because it was filed beyond the five-day limit set for this process, upon which he proceeded to the second level of review, and then to the third step of review at the commissioner level where his grievance was finally denied. *Id.*

From this recitation, it appears that this proposed new Amended Complaint is designed to remedy a defect that the defendant found in the first Amended Complaint, namely a failure to exhaust administrative remedies by alleging that such an effort was undertaken, albeit about five months after the original complaint was filed and two months after the motion to dismiss was filed.

Mason's attempt to "fix" the problem created by his apparent failure to exhaust administrative remedies, however, ignores the clear meaning of the PLRA which bars an action concerning prison conditions based on federal law "*until* such administrative remedies are exhausted." 42 U.S.C. § 1997e(a) (emphasis supplied). The pleadings and other submissions show that the original complaint was filed on July 19, 2000, but that the newly alleged administrative grievance was not undertaken until January 12, 2001. Thus, it is plain that Mason did not exhaust his administrative remedies before commencing this action and he has cited no law which would permit him to comply

20

with this condition on a retroactive basis. Indeed, federal case law interpreting the PLRA has held that available administrative remedies are exhausted when the time limits for the prisoner grievance process have expired, *Underwood v. Wilson*, 151 F.3d 292, 295 (5th Cir. 1998), and that a prisoner litigant cannot bypass the state's administrative processes designed to address grievances. *See Brown v. Toombs*, 139 F.3d 1102, 1103 (6th Cir. 1998). Such processes would presumably include, as they do here, the need to address grievances in a timely way pursuant to time limits adopted by agency rule.

Thus, the attempts to pursue a grievance process in 2001 are ineffective. The time limits to seek this administrative remedy apparently expired in April of 1998, or shortly thereafter, and it is now impossible to turn back the clock so that this plaintiff can comply with the defendant's administrative procedures before commencing an action founded on prison conditions and federal law. In sum, plaintiff Mason cannot cure a defect in this action as the period of time within which he was to exhaust administrative remedies has long since gone by. *Booth v. Churner*, 206 F.2d at 293, n.3.

From this, it must be concluded that any amendment to the complaint to allege the late compliance with the exhaustion requirement of the PLRA would be futile because, as discussed infra, Mason's failure to exhaust administrative remedies must result in the dismissal of his federal claims in Counts I and II of the Amended Complaint.

While futility of a proposed amendment is generally a basis to deny a motion to amend under the Federal Rules of Civil Procedure, *Shortleeves v. Dep't of Corrections*, 2000 WL 825711 (D.Me. 2000); *Hatch v. Dep't of Children, Youth and Families*, 274 F.2d 12, 19 (1st Cir. 2001), our Law Court has relied on F.R. Civ. P. 15 and its interpretation by

21

federal courts as precedent in applying M.R. Civ. P. 15. *See Bangor Motor Co. v. Chapman,* 452 A.2d 389, 392 (Me. 1982) (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222, 224 (1962) (in absence of reasons, including futility of amendment, leave to amend should be freely given)).

Thus, when it appears, as it does here, that a proposed amendment to a complaint would be futile in curing effects in prior pleadings, the motion to amend ought to be denied. This is because the amended pleading will invite a motion to dismiss which will, in all likelihood, succeed so that the amendment will result in wasted time and resources of the parties and the court which justice does not require. M.R. Civ. P. 15(a).

Finally, it is worth repeating the argument advanced by the defendant in this aspect of the parties' debate as it carries unmistakable logic with it. That is, if a prisoner does not comply with the administrative rules governing the inmate grievance process, he cannot be said to have exhausted them. Were it otherwise, a prisoner plaintiff could ignore the requirements of the grievance process, including its time constraints, allege that he had exhausted that process despite such missteps, and proceed forward with his case. The PLRA could not have intended such a result as it unambiguously requires that a prisoner exhaust, i.e., complete, the administrative process before commencing a case of this nature. It is undisputed that Mason never completed the MSP grievance process in accordance with its time limits and therefore it must be concluded that he did not exhaust that process before commencing this action. Accordingly, Counts I and II, as

22

noted, cannot proceed further and no amendment to the complaint can overcome these failings. As such, the motion to amend the complaint must be denied.[7]

## V. Plaintiffs' Motion to Supplement Plaintiffs' Objection to Defendant's Motion to Dismiss.

The defendant's Motion to Dismiss of November 12, 2000, expressed the argument that the plaintiffs' claims based on federal law as expressed in Counts I and II ought to be dismissed because the defendant, as an element of the State of Maine, was constitutionally immune from such claims. In support of this contention, the defendant cited the case of *Alden v. Maine*, 527 U.S. 706, 756 (1999) for the proposition that our federal constitution provides immunity for a state from a private suit in its own courts. More to the point, the defendant also cited federal cases, including one from the Supreme Court, *Kimel v. Florida Board of Regents*, 528 U.S. 62, 82-83, 120 S.Ct. 631 (2000), which held that the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634, was an invalid exercise of Congress' authority under the Fourteenth Amendment which thereafter caused various federal circuit courts to question the application of the ADA to the states via this Amendment. Motion to Dismiss, pp. 7-10.

In response to these arguments, the plaintiffs in their reply to the motion to dismiss, dated December 6, 2000, brought to this court's attention the circumstance that the Supreme Court had granted certiorari in the case of *University of Alabama at Birmingham Bd. of Trustees v. Garrett*, 529 U.S. 1065, 120 S.Ct. 1669 (2001) for the purpose of resolving the question of whether Congress exceeded its authority under section 5 of the Fourteenth Amendment by enacting Title I of the ADA as enforceable against the

---

[7] The Motion to Amend will be granted to change typographical errors in paragraphs 11 and 25 as prayed for.

states. As a result, the plaintiffs asked this court to stay its ruling on the pending motion to dismiss until the Supreme Court had decided *Garrett* which, presumably, would be dispositive of this aspect of the parties' debate as to Count I of the Amended Complaint which is based on a violation of the ADA by a state agency. Plaintiffs' Objection to Defendant's Motion to Dismiss, p. 4.

Although the defendant objected at first to a stay pending action by the Supreme Court in *Garrett*, when oral argument was scheduled on the motion to dismiss on January 3, 2001, it agreed to a stay pending action in that case. *See* Order of Stay, January 3, 2001 (Marsano, J.).

On April 20, 2001, counsel for the defendant notified the clerk of this court that the Supreme Court had decided the *Garrett* case and had held that in enacting Title I of the ADA, Congress had failed to properly exercise its Fourteenth Amendment powers and did not effectively abrogate the states' constitutional immunity.[8]

On May 31, 2001, the plaintiffs, through counsel, advised the court by correspondence and in their Reply to Defendant's Objection to Motion for Leave to File Second Amended Complaint that the *Garrett* decision was critical to the resolution of the motion to dismiss the ADA claim and that no further briefing on that topic was required in the wake of that decision.

On January 25, 2002, the defendant's attorney wrote the court and represented that the plaintiffs' motion to amend and the defendant's motion to dismiss had been argued on September 5, 2001, at which time plaintiffs' counsel had agreed that the ADA

---

[8] The decision in *Board of Trustees of the University of Alabama v. Garrett* may be found at 531 U.S. 356, 121 S.Ct. 955 (2001).

24

claims had to be dismissed in light of *Garrett*.[9] A copy of this letter was sent to plaintiffs' counsel who did not contradict this representation.

On March 22, 2002, oral argument was conducted a second time on the motion to dismiss and the motion to amend. Again, on this occasion, counsel for the plaintiffs agreed that Count I of the Amended Complaint had to be dismissed in light of the Supreme Court's holding in *Garrett*. Accordingly, no argument was advanced at that time on the merits of the two motions as they affected Count I. At this point, the case was finally turned over to this court for action.

On September 10, 2002, however, the plaintiffs filed their Motion to Supplement Plaintiffs' Objection to Defendant Motion to Dismiss. In it, despite their earlier agreements that *Garrett* was dispositive of the motion to dismiss as to their ADA claims, the plaintiffs ask, in essence, to withdraw that concession, and argue for the first time that Maine was not immune from the application of Title II of the ADA. In support of this new contention, the plaintiffs rely on a case recently decided by the First Circuit Court of Appeals, *Kiman v. New Hampshire Dep't of Corrections*, 301 F.3d 13 (1st Cir. 2002).

In protesting this late expression of a new argument, the defendant correctly argues that the plaintiffs have on at least two occasions advised this court that Count I of the Amended Complaint had to be dismissed in light of the *Garrett* decision. That being so, the defendant says, the plaintiffs have waived any right to resuscitate an argument that they have twice officially abandoned, namely that the State was not immune from their suit based on a violation of Title II of the ADA. Moreover, the

_____

[9] The trial judge who heard argument on these motions retired before rendering a decision on them.

25

defendant says, given the passage of time in this case, inserting a new argument on a point previously conceded is unfair and prejudicial to the plaintiffs.

The court finds these arguments compelling, but, more importantly, concludes that any new argument as to the viability of Count I is of no consequence. This court has concluded that, at least as to plaintiff Mason, claims based on federal statutes cannot, as a matter of law, succeed. This is because, as discussed *infra*, plaintiff Mason failed to comply with a condition precedent to the prosecution of his federal claims, namely the exhaustion requirement dictated by the PLRA. Thus, even if *Kiman* were a binding precedent, it would not cure the defect in this plaintiff's case that he failed to exhaust administrative remedies before commencing this litigation.

Because of this conclusion, this court will decline to attempt to traverse "the rapidly changing landscape of the Supreme Court's recent jurisprudence regarding the states' immunity from suit by private parties under federal law." *Kiman*, 301 F.3d at 17.[10] Indeed, although decisions from our First Circuit Court of Appeals deserve considerable deference when they address federal law, the decision in *Kiman* is hardly the last word on the abrogation of the states' immunity to suit under Title II of the ADA. At least two circuits have ruled that by virtue of *Garrett*, states are immune from suit based on this federal statute. *See Reickenbacker v. Foster*, 274 F.2d 974 (5th Cir. 2001); *Thompson v. Colorado*, 288 F.3d 1241 (10th Cir. 2001) amended by 278 F.3d (10th Cir.

---

[10] The defendant has invited this court to undertake this task by, for example, an examination of the Congressional Record as to the ADA which it says would demonstrate that Congress did not effectively abrogate the states' immunity via Article 5 of Fourteenth Amendment. It also asks that the court undertake its own analysis of the various federal cases which address the applicability of Title II of the ADA to the states. This court, a state trial court, will decline this invitation for the reasons cited and for the reason that our federal courts have already done so with, it will be explained, different results. This court will not endeavor to resolve a dispute as to the import of a federal law on which our federal courts of appeal have yet to agree.

2001), cert. denied 122 S.Ct. 1960 (Mem.) (2002). Other circuits have reached the opposite conclusion but pre-*Garrett*. *See Amos v. Md. Dep't of Public Safety*, 178 F.3d 212 (4th Cir. 1999); *Clark v. California*, 123 F.3d 1367 (9th Cir. 1997); *Crawford v. Indiana Dep't of Corr.*, 115 F.3d 481 (7th Cir. 1997).

It is also worth observing that *Kiman* hinged on a determination that the inmate plaintiff effectively alleged a violation of the Constitution's Eighth Amendment prohibition against cruel and unusual punishment. As such, the plaintiff there was claiming an offense of constitutional proportions for which Congress authorized legal action against a state under Article 5 of the Fourteenth Amendment which permits that body to enact legislation to enforce that amendment.

Neither plaintiff, however, has articulated any transgression of their constitutional rights or deliberate indifference to these rights. Instead, since the beginning of this case, the plaintiffs have made the unadorned claim that the defendant's actions violated the ADA because they were denied special showering facilities or were denied accommodations in shortening walks necessary to access prison programs or facilities. If these transgressions reach constitutional import, such could not be found in the Amended Complaint.

For all these reasons, then, this motion which seeks to supplement the plaintiffs' objection to the motion to dismiss is to be denied.

## VI. Conclusion.

The court has determined that the various claims of plaintiff Mason must be dismissed. Plaintiff Napier's claims must also be dismissed except his cause of action in Count II which was unaddressed by the defendants' arguments in its motion except its

27

assertion as to the lapse of a two-year statute of limitations which this court found to be inapplicable to a claim based on a federal law which asserts a civil rights claim.

Accordingly, the clerk is directed to make the following entries:

I.      Motion to Dismiss is GRANTED as to Plaintiff David Mason as to all counts in the Amended Complaint.  It is GRANTED as to Plaintiff Philip Napier as to Counts I, III and IV, but DENIED as to Count II.

II.     Plaintiff Mason's Motion to Amend Complaint is DENIED, except that paragraphs 11 and 25 of the Amended Complaint are corrected as prayed for.

III.    Plaintiffs' Motion to Supplement Plaintiffs' Objection to Defendant's Motion to Dismiss is DENIED.

So ordered.

Dated:  November___15___, 2002

John R. Atwood
Justice, Superior Court

28

Date Filed 7/19/00      Knox      Docket No. CV-00-042

County

Action   Constitutional/Civil Rights

PHILIP NAPIER and DAVID MASON    vs. STATE OF MAINE, DEPARTMENT OF CORRECTIONS

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| John P. Gause, Esq. | Diane Sleek, Esq. |
| PO Box 961 | Assistant Attorney General |
| Lewiston ME 04243-0961 | 6 State House Station |
| 784-3576 | Augusta ME 04333 |
| | 626-8800 |

| Date of Entry | |
|---|---|
| 7/19/00 | Complaint with Attachments, Summary Sheet and Filing Fee filed by Attorney Gause.<br>Case File Notice mailed to Attorney Gause. |
| 10/23/00 | Return of Service on Summons filed:<br>–Department of Corrections served through Martin Magnusson, Commissioner on 10/13/00. |
| 11/3/00 | Motion to Dismiss, Proposed Order and Request for Hearing filed by Assistant Attorney General Sleek. |
| 11/22/00 | On 11/21/00, Plaintiffs' Motion for Enlargement of Time Within Which to File Their Objection to Defendant's Motion to Dismiss and Proposed Order filed by Attorney Gause. |
| 11/29/00 | Order filed:<br>Upon review and consideration, Plaintiff's Motion for Enlargement of Time Within Which to File Their Objection to Defendant's Motion to Dismiss is hereby GRANTED. Plaintiffs must file their objections on or before Wednesday, December 6, 2000.<br>Dated: 11/29/00<br>Atwood, J.<br>Copy mailed to Attorneys Gause and AAG Sleek. |
| 12/6/00 | Amended Complaint and Plaintiffs' Objection to Defendant's Motion to Dismiss filed by Attorney Gause. |
| 12/12/00 | On 12/8/00, Hearing on Motion to Dismiss scheduled for 1/3/01 at 10:30 a.m. Notice mailed to Attorney Gause and AAG Sleek. |
| 12/13/00 | Motion for Enlargement of Time to File Reply and Proposed Order filed by AAG Sleek. |

(GO TO NEXT PAGE)